## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BROADSOFT, INC.,

      Plaintiff,

v.

Civil Action No. 13-711-RGA

CALLWAVE COMMUNICATIONS, LLC,

      Defendant.

### MEMORANDUM OPINION

John G. Day, Esq., ASHBY & GEDDES, Wilmington, DE; Tiffany Geyer Lydon, Esq., ASHBY & GEDDES, Wilmington, DE; Andrew C. Mayo, Esq., ASHBY & GEDDES, Wilmington, DE; Jonathan G. Graves, Esq. (argued), COOLEY LLP, Reston, VA; Stephen P. McBride, Esq., COOLEY LLP, Reston, VA.

Attorneys for Plaintiff

James G. McMillan, III, Esq., PEPPER HAMILTON LLP, Wilmington, DE; William D. Belanger, Esq. (argued), PEPPER HAMILTON LLP, Boston, MA; Suparna Datta, Esq., PEPPER HAMILTON LLP, Boston, MA; L. Andrew Tseng, Esq., PEPPER HAMILTON LLP, Boston, MA; Megan E. L. Bigelow, Esq., PEPPER HAMILTON LLP, Boston, MA; Gregory S. Bishop, Esq., PEPPER HAMILTON LLP, Redwood City, CA; Charles F. Koch, Esq., PEPPER HAMILTON LLP, Redwood City, CA.

Attorneys for Defendant

October __, 2017

_Richard G. Andrews_
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are Plaintiff's Motion for Judgment on the Pleadings Based on

Patent Ineligibility Under 35 U.S.C. § 101 (D.I. 290) and related briefing (D.I. 291, 366, 385)

and Plaintiff's Motion for Summary Judgment of Invalidity Based on Broadworks (D.I. 304) and

related briefing (D.I. 305, 359, 388).[1] The Court held oral argument on July 31, 2017. (D.I. 419)

("Hr'g Tr."). For the reasons that follow, the Court will grant Plaintiff's Motion for Judgment on

the Pleadings Based on Patent Ineligibility Under 35 U.S.C. § 101 (D.I. 290) and will grant

Plaintiff's Motion for Summary Judgment of Invalidity Based on BroadWorks (D.I. 304).

## I.    BACKGROUND

Plaintiff filed a declaratory judgment action on April 23, 2013 seeking a declaration that

none of Plaintiff's accused products infringed any valid claims of Defendant's U.S. Patent Nos.

8,351,591 ("the '591 patent") and 7,822,188 ("the '188 patent"), and further that one or more

claims of those patents were invalid. (D.I. 1). Plaintiff had previously licensed the accused

software products to Telovations, Inc., which was subsequently acquired by Bright House

Networks, LLC. (*Id.*at 2, 4). As part of that acquisition, Telovations assigned all of its rights

under the license agreement to Bright House. (*Id.* at 4). The license agreement between Plaintiff

and Telovations contained an indemnification clause specifying that Plaintiff would defend any

intellectual property infringement action brought based on the accused software products. (*Id.* at

3). After Defendant sued Telovations and Bright House for patent infringement based on the

accused software (*CallWave Commc'ns, Inc. v. Telovations, Inc.*, Civ. Act. No. 1:13-cv-00074),

---

[1] On August 17, 2017, Plaintiff filed supplemental declarations in support of its Motion for Summary Judgment of Invalidity Based on BroadWorks. (D.I. 417). Defendant filed a letter on August 18, 2017 asserting that these supplemental declarations were "untimely and procedurally improper," and requested an opportunity to be heard on the new theories advanced in the supplemental declarations and an opportunity for written response. (D.I. 418). As I have not considered Plaintiff's supplemental declarations, Defendant's request is dismissed as moot.

those two entities sought indemnification from Plaintiff under their license agreement. (D.I. 1 at

3-4). Plaintiff brought this declaratory judgment action as part of its indemnification of

Telovations and Bright House. (*Id.* at 4).

The '591 and '188 patents share a common specification and generally relate to "systems

and methods for processing and placing telephone calls." ('188 patent at 1:48-50; '591 patent at

1:50–52). The parties separate the asserted claims into two categories: the sequential dialing

claims (claims 40 and 41 of the '188 patent) and the single number outcall claims (claims 6, 14,

26, 27, 29, 34, and 37 of the '188 patent and claims 1, 9, 16, and 17 of the '591 patent).

## A.    Sequential Dialing Claims

Claim 40 is an independent claim and reads as follows:

40.    A method of processing calls, comprising:

receiving at a call processing system a message from an Internet protocol
proxy regarding a first call from a caller;

determining if the first call is directed to a telephone address of a
subscriber of services offered by the call processing system, wherein at least
partly in response to determining that the telephone address is that of a
subscriber:

accessing an account record associated with the subscriber, the account
record including at least one subscriber instruction;

based at least in part on the subscriber instruction, placing a first outcall to
a first communication device associated with the subscriber;

if the first outcall is not answered within a first number of rings or period
of time, placing a second outcall to a second communication device associated
with the subscriber; and

receiving a call connect instruction from the subscriber; and

instructing the call processing system to connect the first call to a third
communication device.

('188 patent, claim 40). Claim 41 depends from claim 40 and adds the limitation that the internet

protocol proxy is a session internet protocol proxy that converts SS7 signaling to SIP protocol.

('188 patent, claim 41).

## B.    Single Number Outcall Claims

2

Claim 1 of the '591 patent reads as follows:

1. A method of processing calls, the method comprising:

storing in computer readable memory associated with a call processing system a first phone address associated with a first subscriber;

storing in computer readable memory a plurality of phone addresses for the first subscriber;

participating at the call processing system in a first call associated with the first subscriber, the first call associated with a second phone address different than the first phone address;

placing a first outcall from the call processing system to a first called party, wherein the call processing system inserts at least a portion of the first phone address in a callerID field associated with signaling information associated with the first outcall;

causing the first call and the first outcall to be bridged;

participating at the call processing system in a second call associated with the first subscriber, the second call involving a subscriber communication device associated with a third phone address different than the first phone address;

placing a second outcall from the call processing system to a second called party, wherein the call processing system inserts at least a portion of the first phone address in a callerID field associated with signaling information associated with the second outcall; and

causing the second call and the second outcall to be bridged.

('591 patent, claim 1).

Defendant disagrees with Plaintiff's assertion that claim 1 of the '591 patent is representative of all of the single number outcall claims. (D.I. 291 at 8–12; D.I. 366 at 4, 6).

## II.    LEGAL STANDARD

### A.    Patentable Subject Matter under 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS*

3

*Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 556 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 556 U.S. at 77). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 556 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11

4

(2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion for judgment on the pleadings. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016). The Federal Circuit follows regional circuit law for motions for judgment on the pleadings. *Id.* Under Third Circuit law, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

**B. Invalidity Under 35 U.S.C. § 102**

"To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention." *Silicon Graphics, Inc. v. ATI Tech., Inc.*, 607 F.3d 784, 796

5

(Fed. Cir. 2010). "[E]very element of the claimed invention [must be described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009). As with infringement, the court construes the claims and compares them against the prior art. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

## C.    Invalidity Under 35 U.S.C. § 103

A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007). "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." *KSR*, 550 U.S. at 406 (internal citation omitted).

A court is required to consider secondary considerations, or objective indicia of nonobviousness, before reaching an obviousness determination, as a "check against hindsight bias." *See In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1078–79 (Fed. Cir. 2012). "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the

6

circumstances surrounding the origin of the subject matter sought to be patented." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966). Where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427.

## III. DISCUSSION

### A. Procedural Posture

Plaintiff asserts that claim 1 of the '591 patent is representative of all of the single number outcall claims (claims 1, 9, 17, and 17 of the '591 patent and claims 6, 14, 26, 27, 29, 34, and 37 of the '188 patent). (D.I. 291 at 9, 12). Defendant disputes this characterization, citing limitations present in some of the asserted claims that are not present in claim 1 of the '591 patent. (D.I. 366 at 4, 4n.1). Defendant agrees, however, "that each of the [a]sserted [c]laims is directed to solving the problem of having multiple telephone addresses but providing only a single telephone address in the caller identification field." (D.I. 366 at 6).

Plaintiff argues that claim 1 of the '591 patent is representative because, like the rest of the single number outcall claims, it is "substantially similar and linked to the same abstract idea . . . of identifying a caller with a single representative telephone number." (D.I. 291 at 9 (citing *Content Extraction*, 776 F.3d at 1348)). Plaintiff discusses each of the asserted claims, identifying differences between each asserted claim and claim 1 of the '591 patent and describing why each asserted claim is directed to the same abstract idea as claim 1 of the '591 patent. (D.I. 291 at 9–12). For example, claims 9 and 17 of the '591 patent recite the same steps as claim 1 but claim 9 is drafted in the form of a system including at least one computer processor, and claim 17 is drafted in the form of a computer readable medium. (*Id*. at 10; '591

7

patent at claims 1, 9, 17). Similarly, Plaintiff notes that claim 1 of the '188 patent, from which asserted claims 6 and 14 depend, recites the same steps as claim 1 of the '591 patent, with "minor configuration differences, such as . . . telephone number[s] associated with certain network types." (D.I. 291 at 10; '591 patent at claim 1; '188 patent at claim 1). Plaintiff also discusses the "insubstantial differences of claim 26" from claim 1 of the '188 patent, identifying storage of telephone numbers as opposed to phone addresses; "receiving additional phone addresses from the user, rather than merely storing them;" and based at least in part on "receiving an indication that the user wants to make a call," "connecting the call," rather than "participating in the call." (D.I. 291 at 11). Noting that claims 27, 29, 34, and 37 of the '188 patent depend from claim 1 of the '188 patent, Plaintiff addresses the additional elements present in the claims and explains why the dependent claims remain directed to the same abstract idea. (*Id.* at 11–12).

I agree with Plaintiff that claim 1 of the '591 patent is representative of the single number outcall claims. All of the asserted single number outcall claims are tied to the same general steps of 1) storing a plurality of phone addresses for the subscriber; 2) participating in a first phone call associated with the first subscriber at a second phone address different from the first phone address stored for the subscriber; 3) inserting a portion of the subscriber's first phone address in the callerID field of the first outcall when placing a first outcall originating from the subscriber's second phone address to a called party; 4) causing the first call to be connected with the first outcall; and 5) repeating this process in a call associated with the subscriber at a third phone address. Additionally, Defendant fails to address why claim 1 is not representative, merely stating that Defendant "does not agree that claim 1 is representative" of the single number outcall claims. (D.I. 366 at 4). As support for this assertion, Defendant merely mentions additional

8

limitations in five of the asserted claims, relegating them to a footnote without analysis. (*Id.* at 4

n.1). Although Defendant discusses claim 16 of the '188 patent later in its brief, this additional

discussion does not provide further analysis, simply repeating the same limitation to argue that

claim 16 warrants consideration separately from claim 1. (*Id.* at 19). Defendant fails to explain

how these additional limitations differentiate the claims or sever them from the same abstract

idea as claim 1 of the '591 patent. Therefore, I conclude that claim 1 of the '591 patent is

representative of the asserted claims because the single number outcall claims are "substantially

similar and linked to the same[] idea." *See Content Extraction*, 776 F.3d at 1348 (internal

citations omitted).

## B.   Patentable Subject Matter

### 1.   Sequential Dialing Claims

#### a.   Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract

idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the

longstanding rule that an idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v.

Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive

rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of

the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir.

2016). The Supreme Court has recognized, however, that "fundamental economic

practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*,

134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract

ideas. In navigating the parameters of such categories, courts have generally sought to

"compare claims at issue to those claims already found to be directed to an abstract idea

9

in previous cases." *Enfish*, 822 F.3d at 1334. "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Plaintiff argues that, like the concept of sending, receiving, and managing information between a subscriber and a network in *Parus Holdings v. Sallie Mae Bank*, 137 F. Supp. 3d 660 (D. Del. 2015), claims 40 and 41 of the '188 patent "are directed to the abstract idea of sequentially dialing a list of telephone numbers." (D.I. 291 at 15-16). Plaintiff also asserts that like the budgeting claims held invalid in *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015), the sequential dialing claims provide no improvement to any computer or technological process; instead, they merely "access a list of telephone numbers [in a database] associated with the called party and sequentially dial them in the ordinary fashion, providing simple automation of a task previously performed manually." (D.I. 291 at 15–16). Although the claims may increase "convenien[ce] for the caller, [they] are not an improvement in computer functionality." (D.I. 385 at 7). Accordingly, Plaintiff argues that the claimed automation "is a commonplace abstract concept or 'method of organizing human activity' under *Alice*." (D.I. 291 at 16).

Defendant counters that Plaintiff's analogy is "flawed" and "oversimplifies the [sequential dialing] claims." (D.I. 366 at 20). According to Defendant, the problem addressed by the invention is "redirecting the call to another number associated with the subscriber without hanging up and redialing" after receipt of a busy signal from one of the subscriber's phone

10

numbers. (D.I. 366 at 20). During oral argument, Defendant also characterized the claim as being directed to a call processing system "that allows the control and management of multiple calls, multiple devices, calls to multiple devices." (D.I. 419 (hereinafter, "Tr.") at 27). Defendant further argues that the claims are not abstract because "[h]umans have not [practiced] and cannot practice" the claims: "[a] conventional operator cannot redirect a call in a situation where the caller does not know the called party's other phone numbers." (D.I. 366 at 19, 20).

I agree with Plaintiff that claims 40 and 41 of the '188 patent are directed to an abstract idea. Claim 40 of the '188 patent requires: 1) receiving at a call processing system a call from a caller via an Internet proxy; 2) cross-referencing the telephone address dialed by the caller with a database in the call processing system to determine if the called party is a subscriber; 3) accessing the database record for the subscriber, which includes at least one instruction from the subscriber; 4) calling the subscriber's first listed phone number in accordance with the subscriber's instruction(s); 5) calling the next listed phone number if there is no answer at the first number after a preset period of time; 6) receiving a call connect instruction from the subscriber; and 7) connecting the call. *(See* '188 patent, claim 40; Hr'g Tr. at 22). Essentially, the claim is directed to organizing human activity: accessing stored information when prompted by a user's incoming call, and executing an automated response according to stored instructions provided in advance by a subscriber. Dependent claim 41 is directed to the same abstract idea. Claim 41 differs from claim 40 only by the additional limitation that specifies parameters for the "Internet protocol proxy." ('188 patent at claim 41). This limitation does not change the subject matter to which claim 41 is directed. Like the claims that "facilitate[d] the exchange of financial obligations between two parties by using a computer system as a third-party intermediary" in

11

*Alice*, the call processing system here facilitates connecting a caller with a called party by dialing multiple numbers for the called party if necessary. *See Alice*, 134 S. Ct. at 2352.

This process does not constitute an improvement in technology that would render the claims patentable. *See Enfish*, 822 F.3d at 1337 (finding claims directed to new type of database that represented "an improvement of an existing technology" not abstract). The '188 patent describes the problem addressed by the claims as callers receiving busy signals or getting sent to voicemail instead of successfully connecting with the called party. '188 patent at 50:27–39. Defendant describes the problem the same way in its briefing (D.I. 366 at 20), and further admits that the technology used in the patent was known and not novel as of the critical date in 1999 (Tr. at 30:1–6, 34:7–8). The "problem" addressed by the claims is a human unavailability problem, rather than a problem specific to telephony technology. The claims do not improve telephony technology, instead invoking known telephony technology "merely as a tool" to address this human unavailability problem. *Enfish*, 822 F.3d at 1336.

Additionally, Defendant neither attempts to distinguish the cases cited by Plaintiff nor cites any cases to argue that the claims are not directed to an abstract idea. Instead, Defendant merely sets forth the claim language and asserts that "upon a proper comparison, it is clear that humans have not and cannot practice the Sequential Calling claims." (D.I. 366 at 19–20). Defendant's assertion that "an operator cannot redirect a call in a situation where the caller does not know the called party's other phone numbers" is misplaced. (*Id.* at 20). That humans could not practice the claims due to the caller's lack of knowledge of the called party's additional phone numbers does not mean that the claims focus on a "specific asserted improvement in [technology] capabilities." *Enfish*, 822 F.3d at 1336; *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("[T]he category of patent-

12

ineligible abstract ideas is not limited to methods that can be performed in the human mind"). The claims address this knowledge gap by having another human, the called party, provide phone numbers to the call processing system's database in advance. '188 patent at 3:10–12 ("accessing an account record associated with the subscriber, the account record including at least one subscriber instruction"). When the call processing system receives a call, known telephony technology elements perform the routine functions of accessing stored information and directing the call in accordance with the stored instructions provided in advance by the called party.

Therefore, I conclude that asserted claims 40 and 41 of the '188 patent are directed to the abstract concept of sequentially dialing a list of telephone numbers to overcome a busy signal, rather than being rooted in solving a problem specific to telephony technology.

### b. Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents*, 790 F.3d at 1346. Having decided that the patent's claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 830 F.3d at 1353. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or

13

efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures*, 792 F.3d at 1367.

Plaintiff argues that claims 40 and 41 lack an inventive concept because the claims "merely implement the idea of sequential dialing in the context of computer telephony" and recite only conventional telephony elements. (D.I. 291 at 17). Citing the '188 patent specification for support, Plaintiff maintains that the "Internet Protocol proxy" and "Session Internet Protocol (SIP) proxy" recited in claims 40 and 41 represent conventional, known elements. (D.I. 291 at 17, 17 n.5 (citing '188 patent at 12:6–16, 75:33–34, 75:56–58)). The patent does nothing more, Plaintiff asserts, than narrow "the claims to a particular technological application of the abstract idea," which the Federal Circuit and Supreme Court have "found insufficient to convey an inventive concept." (D.I. 291 at 17 (citing *Alice*, 134 S. Ct. at 2358; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014))).

Defendant complains that Plaintiff "improperly oversimplifies each limitation" in the claims and fails to consider each "claim as a whole," citing *McRo, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). (D.I. 366 at 20). Although Defendant asserts that the claims "are directed to an inventive concept under *McRo*," Defendant does not identify what inventive concept is present in the claims. (D.I. 366 at 21). Nor does Defendant specify how analyzing the claims as a whole would provide an inventive concept; instead, Defendant focuses on three separate limitations.

First, Defendant argues that "[t]he call processing system recited in claim 40 is specifically designed to receive messages from an internet protocol proxy," which is the basis for the system's "capab[ility] of receiving a call from multiple telephony interfaces" and "plac[ing] outcalls to multiple telephony interfaces." (*Id.* at 20–21). Defendant argues that "[t]his

14

limitation is essential to the solution" of being able to call multiple different telephony interfaces without hanging up and redialing. (*Id.* at 21). The patent, however, identifies calls ending in busy signals or voicemail, not network compatibility or handling a hybrid network, as the problem to be solved. ('188 patent at 1:52–2:3). Nor does the patent recite a technological solution to achieve network interoperability. It instead describes the elements of the call processing system as "standard." *See, e.g.*, '188 patent at 58:47 (describing the session internet protocol (SIP) of claim 41 as "a standardized signaling protocol), 5:47–49 (describing the Signaling System 7 (SS7) as "one of the standard CCS systems used by the telephone company"), 6:1–5 (describing VoIP as being "used in the telephone system and over the internet" and noting that "[t]eleconferencing over the internet is done using a standard . . . known as ITU-T H.323). In light of the patent disclosures, Defendant's attorney argument does not persuade me that the call processing system imparts an inventive concept to these claims.

Second, Defendant asserts that an inventive concept exists because "the patent contemplates employing a select set of timing rules for the length that the first outcall is permitted to go unanswered before placing the second outcall." (D.I. 366 at 21). According to Defendant, this set of rules amounts to a "meaningful requirement[] when considering the claims as a whole." (*Id.*). Defendant cites *McRo* for the proposition that a claimed genus of rules has been acknowledged as patentable when specific rules (individual species) are described in the specification. (*Id.*). Unlike the rules for automating facial animation in *McRo*, which required defining an output based on at least two variable inputs, the rules here merely require initiating a second outcall after a preset "number of rings or period of time." *McRo*, 837 F.3d at 1313; '188 patent at claim 40. Here, unlike *McRo*, no rule derivation is required, and the rules are not directed to a "complex interaction." *McRo*, 837 F.3d at 1315. The rules in claim 40 broadly

15

assert a period of time as the criteria from shifting from the first outcall to the second outcall. *See* '188 patent at claim 40. There is nothing inventive about using a preset amount of time to determine when to initiate a particular step in a process, and it is difficult to imagine using in this system alternative rules not based on the passage of some period of time. Additionally, part of the claimed invention in *McRo* was "obtaining a first set of rules." *McRo*, 837 F.3d at 1307. Here, by contrast, the rules are preset, and the claims merely direct their application. '188 patent at claim 40. Whereas the rules in *McRo* represented an improvement to automated facial animation, the genus of rules recited here does not represent an improvement to telephony technology. *See McRo*, 837 F.3d at 1313. For the reasons stated above, I find *McRo* inapposite and reject Defendant's argument that the claimed timing rules provide an inventive concept.

Third, Defendant argues that claim 41 contains an inventive concept because it recites a "hybrid network that is capable of converting SS7 to SIP protocol, thereby enabling the call processing system to place outcalls to multiple different telephony interfaces." (D.I. 366 at 22). As discussed above and in the specification of the '188 patent, both SS7 and SIP were industry standards known at the time of the invention. *See, e.g.*, '188 patent at 58:44–52 (describing SIP as a "standard signaling protocol), 58:66–59:3 (describing the SS7 protocol as "standard"). The '188 patent specification's only discussion of conversion between SIP and SS7 merely states that such conversion takes place without describing how this process is accomplished. '188 patent at 68:5-8. If this conversion constituted an inventive concept, one would expect a lengthier discussion in the patent of how to accomplish it. The lack of discussion of this conversion process shows that it was a routine process known to those of skill in the art at the time of the invention. Therefore, I find that claim 41, like claim 40, lacks an inventive concept.

16

For the reasons given above, I find that claims 40 and 41 of the '188 patent are drawn to an abstract idea and the claims do not provide an inventive concept. Therefore, I will grant Plaintiff's Motion for Judgment on the Pleadings Based on Patent Ineligibility Under 35 U.S.C. § 101 with respect to claims 40 and 41 of the '188 patent.

## 2.  Single Number Outcall Claims

### a. Abstract Idea

Plaintiff argues that the asserted single number outcall claims are "directed to the abstract idea of identifying a caller with a single telephone number." (D.I. 291 at 19). Plaintiff asserts that the claims do not improve telephony technology; instead, the claims "merely store[] information (i.e., telephone addresses), categorize[] that information (i.e., associate[] the telephone addresses with particular subscribers), and then transmit[] the information (i.e., insert[] the telephone address into a callerID field)." (D.I. 291 at 20). Plaintiff analogizes the claims here to the claims held abstract in *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988 (Fed. Cir. 2014). In *Cyberfone*, the Federal Circuit held invalid claims directed to the method of obtaining data transaction information from a single phone transaction, separating the data into parts for transmission to different destinations, and sending the separated data to the different destinations over a channel. *Id.* at 990, 993. Plaintiff also asserts that the abstract concept to which the claims are directed "has been practiced for decades" because a call involving an assistant located in an office who connects an employee working from home with a third party would display a number for the office, rather than the employee's home phone number, in the callerID field. (D.I. 291 at 19). In this scenario, although the employee would initiate the call from a home phone address (the second phone address), the callerID field would

17

display the office phone address (the first phone address), not the employee's home phone address when the employee was connected to the called party. (*See id.*at 19).

Defendant asserts that Plaintiff's analogy to the office scenario "would not practice the claim because the hypothetical system would present a callerID for a group of people, the general office number, not a number associated with the subscriber, as claimed." (D.I. 366 at 14). The claims at issue in *Cyberfone* are distinguishable, Defendant contends, because they were directed to "a well-known concept of categorical data storage," whereas the claims at issue here "specifically solv[e] a problem in the field of telephony." (*Id.* at 17). According to Defendant, the specific problem addressed by the claims is "providing the same 'first phone address' regardless of the actual 'second phone address' placing the call." (*Id.* at 16). Finally, Defendant maintains that "the [s]ingle [n]umber [o]utcall claims do not preempt all methods of providing a single phone address caller ID," because the assistant in Plaintiff's analogy could not practice the claims. (*Id.* at 17).

I agree with Plaintiff that the asserted single number outcall claims are directed to an abstract idea. (D.I. 291 at 19). Claim 1 of the '591 patent requires: 1) storing a first phone address for a subscriber; 2) storing two or more addresses for the subscriber; 3) participating in a first phone call associated with the first subscriber at a second phone address; 4) inserting the a portion of the subscriber's first phone address in the callerID field of the first outcall when placing a first outcall to a called party originating from the subscriber's second phone address; 5) causing the first call to be connected with the first outcall; 6) participating in a second call with the subscriber originating from a third phone address associated with the subscriber; 7) inserting the a portion of the subscriber's first phone address in the callerID field of the second outcall when placing a second outcall to a called party originating from the subscriber's

18

third phone address; and 8) causing the second call to be connected with the second outcall. ('591 patent at claim 1). Essentially, the claim is directed to storing data in a database, looking up data from that database in response to the initiation of a phone call, and inserting at least a portion of that data in the already-existing callerID field.

The claims do not "focus on a specific means or method that improves the relevant technology [but] are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *McRo*, 837 F.3d at 1314. First, the problem Defendant identifies as solved by the claims (providing the same first phone address) is a solution, not a problem. The common specification for the asserted patents identifies the problem as receiving a busy signal when trying to reach a called party. (*See, e.g.*, '188 patent at 50:27–39). Providing the same first phone address in the callerID field regardless of which phone address the caller is calling from (a single phone number to identify the caller) represents one element of a solution to this problem. Second, the asserted claims do not represent a solution specific to the field of telephony or focus on a specific means or method that improves telephony technology, as discussed above. Although the solution employed by the asserted claims may utilize conventional telephony components, the problem of being unable to reach a particular individual is a practical, human unavailability problem, not a technological one. For the same reasons discussed with respect to the sequential dialing claims, the single number outcall claims' recitation of the call processing system does not provide an adequate basis to conclude that the claims are directed to solving a problem specific to the field of telephony.

Defendant's argument that Plaintiff's office analogy is flawed is without merit. That the phone address displayed in the callerID field is associated with a group of people does not mean that the subscriber could not choose to provide such a phone address to the system as a contact

19

number for the subscriber. The subscriber's home phone address, for example, may also be a phone address for the subscriber's family members, thus representing an address for a group of people, and Defendant does not dispute that a home phone address could be an address for the subscriber. (*See* D.I. 366 at 5 (identifying an individual's home telephone number as one of the individual's phone addresses while discussing the single number outcall claims)). Additionally, the claims do not require that the phone addresses associated with the subscriber be associated exclusively with the subscriber—they merely require "a first phone address associated with a first subscriber" and "a plurality of phone addresses for the first subscriber." ('591 patent claim 1). A subscriber might choose to provide the general office phone address or the phone address for an assistant (who would likely support more than one person) as the subscriber's first phone address if the subscriber wished to have incoming calls screened before answering them. The assistant in Plaintiff's analogy could thus practice the claims if the first phone address provided by the subscriber-employee was the general office number or the assistant's number.

Alternatively, the assistant could enter the employee's office and place the outcall from there, causing the employee's specific phone address to be inserted in the CallerID field. Neither the '591 patent nor the '188 patent specifies a method of inserting a phone address into the CallerID field. Therefore, since the assistant could manipulate which phone address appears in the CallerID field, the assistant can cause to be inserted in CallerID various phone addresses and can thus practice claim 1 of the '591 patent. Even if the assistant in Plaintiff's analogy could not practice the claims, whether all elements of the claims were known prior to the filing of the patent application is relevant to anticipation and obviousness analysis, not to whether the claims are directed to an abstract idea.

20

While arguing that Plaintiff's analogy is flawed and should be disregarded as evidence that the claims are directed to an abstract idea, Defendant simultaneously seeks to rely on that analogy as evidence that the claims are not abstract because they do not preempt the field. Defendant asserts that since a human can accomplish the result of the claims without infringing them, "[a]ny concerns of preemption are thus avoided." (D.I. 366 at 17). As discussed above, however, a human assistant could practice the claims and infringe them. Regardless, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). That "the [s]ingle [n]umber [o]utcall claims do not preempt all methods of providing a single phone address caller ID" does not mean that they represent an improvement in telephony technology or the solution to a problem specific to telephony technology. (D.I. 366 at 17).

### b. Inventive Concept

Plaintiff argues that the single number outcall claims lack an inventive concept because the claim scope is not limited to anything narrower than "identifying a caller with a single telephone number." (D.I. 291 at 20). Plaintiff further contends that the claims "merely implement this abstract idea using generic and conventional components and operations." (*Id.*). Plaintiff asserts that the "computer readable memory" and "call processing system" limitations are generic computer components. (*Id.* at 20–21). Similarly, the "outcall[s]," "phone addresses," "bridging," and "callerID field" are all "conventional telephony elements and activities" that fail to provide an inventive concept. (*Id.* at 21). Citing *buySAFE*, Plaintiff argues that the asserted claims' mere automation of these "well-known process[es represents] a simplification that the courts have found to lack any inventive concept." (*Id.*). Plaintiff notes that the patents do not claim to have invented the use of phone addresses or the CallerID field,

21

and asserts that the "claimed invention merely takes this preexisting [CallerID] data field and automatically populates the field with a phone address stored in memory pursuant to pre-programmed instructions." (*Id.* at 22). Plaintiff further maintains that "[t]he simple action of populating a data field is not an improvement in computer functionality or an advance of science in the field of telephony. It is a common computer operation that occurs in every general purpose computer." (D.I. 385 at 11). Plaintiff analogizes the claimed inventions to the process of a database lookup in a general purpose computer and asserts that the only difference "is that the patent is limited to a particular technological environment," which is insufficient as a matter of law to confer patentability. (D.I. 291 at 22).

Defendant counters that "[t]he Single Number Outcall claims are directed to the inventive concept of a system for managing incoming and outgoing calls from multiple devices on multiple networks to facilitate call screening." (D.I. 366 at 5). Defendant relies on attorney argument to assert that "[c]laim 1 addresses problems that prior art caller identification systems faced and improves upon the prior art by providing a single phone address for a subscriber's multiple phone numbers, regardless of the networks at issue." (*Id.* at 17). Defendant also maintains that claim 1 does not represent a conventional use of CallerID because it "describes a process of providing the same phone address in the caller ID field for a plurality of telephones." (*Id.* at 19).

As discussed above, the patents do not identify network interoperability as the problem to be solved, nor do the claims provide a technological solution designed to achieve network interoperability. For the same reasons discussed with respect to the sequential dialing claims, I agree with Plaintiff that the call processing system fails to provide an inventive concept for the single number outcall claims. Defendant admitted during oral argument that "[t]he hardware that was utilized [in the patent claims] was known at the time," but asserted that "what was new was

22

combining those known hardware elements together through programming in a new way." (Tr. at 34:7–8). Rather than disclosing a detailed program to achieve the claimed functionality, however, the patents "simply append[] conventional steps, specified at a high level of generality, [which is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (citing *Mayo*, 566 U.S. at 82, 79, 76). Contrary to Defendant's assertion, populating the callerID field with a phone address (the first phone address) different from that which would appear by default (the second or third phone address associated with the device used to place the call) as required by claim 1 does not constitute an unconventional use of callerID. Nor does a substitution of one phone address for another amount to a technological improvement to callerID. It does not change the use of the preexisting callerID field or the type of data displayed in that field, instead simply changing the content of the data displayed. This process is accomplished by a typical database lookup and response. The claims thus merely employ known hardware components and limit conventional steps to the computer telephony environment, which is insufficient to provide an inventive concept. *See Alice*, 134 S. Ct. at 2358.

Defendant also argues that Plaintiff improperly fails to consider the claims as an ordered combination, but Defendant does not identify how considering the claims as a whole would impart an inventive concept to the claims. (D.I. 366 at 18–19). Additionally, Defendant failed to respond to Plaintiff's assertion that additional limitations in claim 1 or any of the asserted claims do not "add anything of significance" when considered as a whole. (D.I. 291 at 22–24). The only limitation Defendant specifically identifies as "warrant[ing] individualized consideration" is the limitation in claim 16 of the first phone address to a "virtual phone address that is not assigned by a carrier to a subscriber". (D.I. 366 at 19 (citing '188 patent at 73:24–26). Defendant seems to argue that this limitation provides an inventive concept because "the

23

assistant [in Plaintiff's analogy] cannot provide an assigned virtual telephone address for the subscriber." (D.I. 366 at 19). Plaintiff counters that this limitation "[b]reaks no new ground since all phone addresses are virtual telephone addresses." (D.I. 291 at 23). Defendant's argument is misplaced. Regardless of whether the assistant could provide the assigned virtual telephone address, claim 16 remains directed to the abstract idea of identifying a caller with a single telephone number, and a carrier's assignment of a virtual telephone address does not provide an inventive concept. I agree with Plaintiff that analyzing the claims as a whole renders them no more patentable than any of their individual elements. (D.I. 291 at 22).

For the reasons given above, I find that claims 1, 9, 16, and 17 of the '591 patent and claims 6, 14, 26, 27, 29, 34, and 37 of the '188 patent are directed to an abstract idea and the claims do not provide an inventive concept. Therefore, I will grant Defendant's Motion for Judgment on the Pleadings Based on Patent Ineligibility Under 35 U.S.C. § 101 with respect to claims 1, 9, 16, and 17 of the '591 patent and claims 6, 14, 26, 27, 29, 34, and 37 of the '188 patent.

## B. Anticipation Based on Broadworks

Plaintiff's motion for summary judgment of anticipation based on Broadworks is a motion for partial summary judgment. It is limited to the single number outcall claims. (D.I. 304).

Where the patentee has accused a prior art product, the accused infringer must show by clear and convincing evidence that the accused products were for sale or in public use prior to the critical date to demonstrate invalidity under § 102. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1365-66 (Fed. Cir. 2000); *accord Evans Cooling Sys., Inc. v. General Motors Corp*, 125 F.3d 1448, 1450 (Fed. Cir. 1997). Where the accused product has been updated since the

24

prior art version, the accused infringer "must demonstrate that ... the accused version ... is materially identical" with respect to the asserted claims. *Cummings v. Adidas USA*, 716 F. Supp. 2d 323, 327 (S.D.N.Y. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 438 (S.D.N.Y. 2005), *rev'd on other grounds*, 594 F.3d 860 (Fed. Cir. 2010).

Defendant initially accused prior art BroadWorks releases, including Release 8, of infringement of the '591 and '188 patents. (D.I. 313-3 (identifying BroadWorks Releases 5-17 as accused products for both patents)). Defendant based the features accused in its final infringement contentions "on the incorporation of the [single number outcall] functionality of the BroadWorks Anywhere feature." (D.I. 359 at 9). Since [t]he BroadWorks Anywhere feature was not available until March 2008," Defendant argues, it has not accused a prior art product, and Plaintiff may not argue material identity between BroadWorks Anywhere and prior art BroadWorks to prevail on an anticipation defense. (D.I. 359 at 12). Plaintiff maintains that the single number outcall functionality was present in prior art BroadWorks releases, including Release 8; Plaintiff further contends that the demo system it created runs Release 8 and demonstrates that the single number outcall functionality is materially identical in Release 8 and in BroadWorks Anywhere. (D.I. 305 at 11).

Since BroadWorks Anywhere is an updated version of prior art BroadWorks releases, Plaintiff may prevail by successfully demonstrating material identity of the relevant features between BroadWorks Anywhere and prior art BroadWorks, and proving that the earlier BroadWorks releases were in public use or on sale prior to the critical date. *See ResQNet*, 382 F. Supp. 2d at 438. Release 8 has a build date of January 2003. (D.I. 314-23 at ELDERING-DX000003). During oral argument, the parties agreed that the effective filing date for the single number outcall claims is September 22, 2005. (Tr. at 13:3–9, 16:3–6). The conception date is

25

August 18, 2005. (D.I. 305 at 12). The parties also agree that the accused features in BroadWorks Anywhere include Click-to-Dial, Remote Office, Call Manager, Alternate Numbers, Shared Call Appearance, and Simultaneous Ring. (D.I. 243-14 at 4–5; D.I. 305 at 10; D.I. 359 at 4). Defendant's expert conceded that BroadWorks Releases 7, 8, and 9 were introduced between March 2002 and January 2003. (D.I. 314-1 at ¶¶ 47, 49).

## 1. Prior Art Versions of BroadWorks Were Sold as of the Critical Date

Plaintiff argues that the relevant prior art features were contained in commercially-licensed prior art BroadWorks versions starting with Release 6 in January 2002 through Release 11.1, available by September 10, 2004. (D.I. 305 at 10–11). As evidence, Plaintiff offers several license agreements, including a May 2004 license agreement between Plaintiff and Sprint Telecom that included the Click-to-Dial, Remote Office, Call Manager, Alternate Numbers, Shared Call Appearance, and Simultaneous Ring features. (D.I. 314-20 at BSCW0005984, BSCW0005990–91). Plaintiff asserts that marketing materials demonstrate that Alternate Numbers, Call Manager, Remote Office, Shared Call Appearance, and Simultaneous Ring were offered for sale prior to the critical date. (D.I. 305 at 11 (citing D.I. 314-26)). Additionally, Plaintiff offers testimony of Mr. Hoffpauir, a witness "who helped develop prior art BroadWorks releases . . . that the Relevant Prior Art Features were available in prior art BroadWorks releases and were demonstrated and sold to customers." (D.I. 305 at 12 (citing D.I. 314-16)). Plaintiff also assembled an operational demo system running BroadWorks Release 8 and offers the testimony of a witness and an expert who assembled and tested that system, respectively, to contend "that all of the relevant prior art features were present in Release 8 and functioned as described in the prior art documentation." (D.I. 305 at 11). Finally, Plaintiff offers a witness declaration that the relevant "prior art features did not materially change, from, for example,

26

Release 8 to Release 9," and Plaintiff maintains that "[a]ny supposed functional changes . . . would have been apparent from the release notes that were produced during discovery." (D.I. 388 at 12). Since no such change was identified in the relevant release notes, Plaintiff argues, the relevant prior art features were not only on sale prior to the critical date, but also in public use because they were known to Plaintiff and its customers before the conception date. (D.I. 305 at 11–12).

Citing its expert's declaration, Defendant asserts that the "BroadWorks Anywhere feature was not available in BroadWorks until March 2008." (D.I. 359 at 9). The cited declaration asserts that "BroadWorks Anywhere was introduced in March 2008 with Release 14.sp4" but does not discuss whether the accused features of BroadWorks Anywhere were available in prior art BroadWorks releases. (D.I. 313-1 at ¶¶ 106-08). Defendant also asserts that Plaintiff "fails to provide the requisite nexus between the [sales alleged in the licenses it presented] and a single product that meets each and every element of the asserted claims" because the licenses appear to cover BroadWorks releases for which Plaintiff has not produced the functional specifications. (D.I. 359 at 21-22). The most current functional specification produced was for Release 8, and several of the licenses cover later releases. (*Id.* at 21-22). Based on the release dates of different BroadWorks versions, Defendant submits that the Sprint license discussed above covers Release 11, and the other licenses presented by Plaintiff cover Releases 7, 9, 9.1, 11, and 11.1. (*Id.* at 21 & n.8). The Release Notes for all of these releases have been produced. (D.I. 243-24 at 4). Defendant argues that because "the specifications themselves show that [the software] change[s] over time," Mr. Hoffpauir's testimony that "[o]nce a feature is included in a release, it remains in subsequent releases unless explicitly end-of-lifed by BroadSoft, which is extremely rare," and that "[e]ven if a feature is subsequently enhanced, the previous functionality is preserved" cannot

27

be credited. (D.I. 307 at ¶ 3; D.I. 359 at 22 (citing D.I. 314-22 at BSCW0005246)). Finally, Defendant argues that the confidentiality provisions in Plaintiff's license agreements preclude the finding of public knowledge required for anticipation under § 102(a). (D.I. 359 at 23).

I agree with Plaintiff. Defendant has failed to raise a genuine dispute of material fact as to whether the relevant prior art features were available for sale as of the critical date. First, the license agreements entered into before the critical date and cited by Plaintiff explicitly include the relevant prior art features. *(See, e.g.*, D.I. 314-20 at BSCW0005990–91). The Federal Circuit has held that a license conveying "a fully operational computer program implementing and thus embodying the claimed method" satisfies the requirements for a § 102(b) prior art reference. *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1371, 1378 (Fed. Cir. 2003). Plaintiff has also produced the Release Notes for Release 8, bearing a date of January 2003 (D.I. 314-30), and the BroadWorks Release Schedule dated September 2002 (D.I. 314-4) that indicates November 27, 2002 as the projected release date for Release 8. In light of both of these documents that suggest that Release 8 was offered for sale prior to the critical date, Defendant's speculation that Release 8 was never offered for sale does not raise a genuine issue of material fact.

Second, Defendant's argument about changes in the functional specifications and the availability of relevant prior art features in Release 8 and later releases is misplaced. The functional specifications necessarily change (such as to introduce bug fixes or compatibility updates), but this does not mean that every functional specification will also necessarily eliminate previously-offered features, or that information about elimination of such previously-offered features is not available elsewhere. The sets of release notes produced by Plaintiff indicate "[t]he overall focus of the Release," include "a description of the features introduced,"

28

reference a "Feature Overview document [containing] a complete description of the features mentioned," and include a section indicating "Functional Changes from [the prior release]." (*See, e.g.*, D.I. 314-3 at BSCW0057731; D.I. 314-5 at BSCW0057805-09). Since removing a feature from the software package would constitute a "functional change" from the prior release, the release notes for any given release should indicate any elimination of previously-offered features. Defendant fails to point to anything indicating the elimination of a previously-offered feature in any of the release notes that have been produced. In the face of Plaintiff's evidence suggesting no removal of previously-available relevant prior art features in the releases following Release 8, Defendant offers only speculation that such a removal may have occurred. Therefore, I conclude that Plaintiff has carried its burden of demonstrating that there is no genuine dispute of material fact that the relevant prior art features were on sale in releases as early as Release 8.

Similarly, the relevant prior art features were known by the public before the date of conception. Plaintiff presents evidence that the features were marketed to potential customers before the conception date, and known and used by Plaintiff's customers who had entered license agreements that included the relevant prior art features. Defendant's only argument against public knowledge of these features is that the license agreements identified by Plaintiff contained a confidentiality provision prohibiting disclosure to third parties. (D.I. 359 at 23). Such a confidentiality provision does not preclude a finding that the relevant prior art features were publicly known before the critical date because, by marketing those features to potential customers, Plaintiff was not seeking to conceal them. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006) (holding that orthodontist's instruction sheet was "sufficiently publicly accessible to qualify as prior art" when it had been distributed to other orthodontists even though it was not accessible by members of the public). Therefore, the relevant prior art

29

features were publicly known before the critical date as a result of Plaintiff's marketing, and thus qualify as prior art under § 102(a).

This, however, does not end the inquiry. Since BroadWorks Anywhere is an updated version of prior art BroadWorks Release 8, Plaintiff must demonstrate that there is no genuine issue of material fact that the two products are materially identical in order to prevail.

## 2. Relevant Prior Art Features in Prior Art Versions of BroadWorks Are Materially Identical to the Relevant Features in BroadWorks Anywhere

Plaintiff asserts that "the accused BroadWorks functionality is materially identical to the functionality that existed in prior art BroadWorks releases 6 through 11.1," regardless of whether Defendant's new claim constructions are adopted. (D.I. 305 at 17). As evidence of material identity, Plaintiff points to the operational demo system running Release 8 that it created, tested, and made available to Defendant for testing. (*Id*. at 11). Although the expert that Defendant sent to inspect the demo system offered no opinion on the subject, Defendant now disputes whether the demo system is an authentic representation of Release 8, asserting that Plaintiff never "confirmed that all of the software and hardware used for the demo system were available at the time of BroadWorks Release 8." (D.I. 359 at 20 (citing D.I. 362 at ¶¶ 85-87)). The software (BroadWorks), not the hardware it was running on, is at issue here. Defendant's assertions about the specifications and physical locations of the hardware used to run the software therefore have no relevance to the authenticity of the software. Screenshots from the testing conducted by Plaintiff's expert confirm that the system tested was running Release 8 and had a build date of January 6, 2003. (D.I. 314-230 at ELDERING-DX000003 (indicating "Application server Rel_8.0 version 1.108" and "Built Mon Jan 6 09:48:03 EST 2003")). Defendant has thus failed to raise a genuine issue of material fact regarding the authenticity of Plaintiff's demo system.

30

Defendant does not dispute that BroadWorks Anywhere is an updated version of prior art BroadWorks versions. Defendant argues, however, that Plaintiff has failed to demonstrate that prior art BroadWorks is materially identical to BroadWorks Anywhere because Plaintiff's expert analyzed only thirteen files to determine if the relevant prior art features were materially identical in both products. (D.I. 359 at 9, 11). This is deficient, Defendant contends, because the thirteen files analyzed by Plaintiff's expert represent only one third of the thirty-nine files Defendant's expert analyzed to show infringement, and "[a]nalyzing a small subset of source code does not show that two software programs are materially identical." (D.I. 359 at 9–10). Citing only its expert's declaration, Defendant argues that one of the files Plaintiff's expert did not analyze was created after the critical date and was relevant to "the insertion of a first phone address into a caller ID field associated with an outcall." (*Id.* at 10-11). Neither that declaration, nor the expert report the declaration relies on, however, identify the same file as being created after the critical date. (*See* D.I. 360 at ¶¶ 12, 17-26; D.I. 365-4 at ¶¶ 56, 70). Defendant also finds fault with Plaintiff's expert's source code analysis because Plaintiff's expert did not take "any independent steps to verify that the code [he reviewed] was operational or included in any actual release prior to the critical date," instead relying on the statements of counsel and other witnesses for that information. (D.I. 359 at 10). Plaintiff counters that it does not rely on source code analysis for its assertion that the relevant prior art features are materially identical in BroadWorks and BroadWorks Anywhere. (D.I. 388 at 6). According to Plaintiff, "[t]he purpose of [its expert's] source code review was to corroborate that [BroadWorks] Anywhere was built using prior art [single number outcall] functionality," which would not have necessitated a line-by-line review of every source code file. (D.I. 388 at 6). Defendant has not raised a genuine issue of material fact as to material identity on the basis of source code review.

31

Defendant also asserts that the analysis underlying Plaintiff's claims of identity improperly abstracts "the asserted claims to two generalized functions—storing in computer readable memory a plurality of phone addresses and participating in calls using second and third phone addresses." (D.I. 359 at 11). This argument merely presents a generalized complaint that Plaintiff's analysis is insufficient for failure to constitute "a fulsome analysis of the BroadWorks Anywhere source code." (*Id*.). Notably, Defendant fails to identify how Plaintiff's analysis failed to account for relevant features present in BroadWorks Anywhere that were absent from prior art BroadWorks. Nor does Defendant cite to any authority requiring "fulsome" source code analysis to prove material identity of two software products. I am therefore not persuaded that Plaintiff's analysis was improper.

Additionally, Defendant asserts that a question of material fact is raised regarding the material identity in BroadWorks Release 8 and BroadWorks Anywhere of the Remote Office and Shared Call Appearance features because Plaintiff continued to make those features separately available in BroadWorks even after they had been released in BroadWorks Anywhere. (*Id*. ). According to Defendant, this calls into question Plaintiff's assertion that these features "were simply repackaged and rebranded into BroadWorks Anywhere." (*Id*. ). To support this argument, Defendant cites only a portion of its expert's declaration discussing the availability of the accused products in their entirety, not the availability of the features at issue. (*Id*. (citing D.I. 362 at ¶¶ 39-41)). It stands to reason that a feature that had been successful in a prior release would be included without modifications to its function in subsequent releases, and the documentary evidence indicates that the Remote Office and Shared Call Appearance features were available in both prior art BroadWorks and BroadWorks Anywhere. (*See, e.g.*, D.I. 314-23 at ELDERING-DX000009-10 (indicating the availability of Remote Office in Release 8); 314-26

32

(indicating that Plaintiff marketed these features to customers as of 2003; D.I. 314-30 at BSCW0057766 (Release Notes for Release 8 indicating that Shared Call Appearance was introduced as a new service in Release 8), BSCW0057779-80 (Release Notes for Release 8 discussing Remote Office functionality); D.I.313-14 at BSCW0000044 (discussing Remote Office feature in BroadWorks Anywhere), BSCW0000064 (discussing Shared Call Appearance feature in BroadWorks Anywhere)). Defendant offers no evidence that the functions of these features were modified in BroadWorks Anywhere, thus generating no genuine issue of material fact as to the features' functional identity in BroadWorks and BroadWorks Anywhere.

For the reasons given above, I find that Plaintiff has carried its burden of demonstrating no genuine issue of material fact that (1) the relevant features were publicly known and on sale in prior art versions of BroadWorks for purposes of § 102, and (2) the relevant features were materially identical in BroadWorks Anywhere and the prior art BroadWorks. *See Vanmoor*, 201 F.3d at 1365-66; *ResQNet*, 382 F. Supp. 2d at 438. Accordingly, I will grant Plaintiff's Motion for Summary Judgment of Invalidity Based on BroadWorks (D.I. 304).

## C.    Obviousness

Plaintiff asserts that even if prior art BroadWorks does not anticipate the asserted claims, it renders them obvious because "[p]rior art BroadWorks already pre-stored a plurality of phone numbers in a database and already included the Call Manager interface with GUI components that displayed phone numbers." (D.I. 305 at 24). Plaintiff maintains that "[i]t would have been trivial to modify prior art BroadWorks so that it displayed a list of stored subscriber phone numbers in the Call Manager and enabled the subscriber to select one of those phone numbers for a callback when performing Click-to-Dial." (*Id.*).

33

Defendant counters that Plaintiff's obviousness argument improperly rests on hindsight. (D.I. 359 at 20 (citing *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016))). Defendant disputes whether prior art BroadWorks stored a plurality of user phone numbers for use in outgoing calls prior to 2008 and questions the veracity of Plaintiff's expert's statement that it would have been trivial to implement the modifications Plaintiff suggests. (D.I. 359 at 20). Defendant further questions whether a person of ordinary skill would have a motivation to modify prior art BroadWorks in such a manner. (*Id*. at 21).

Plaintiff's obviousness argument is a paragraph long. I do not believe such limited argument provides a basis for granting summary judgment of obviousness. I therefore cannot grant Plaintiff's obviousness challenge.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings Based on Patent Ineligibility Under 35 U.S.C. § 101 (D.I. 290) and Plaintiff's Motion for Summary Judgment of Invalidity Based on Broadworks (D.I. 304) are granted. An appropriate order will be entered. Plaintiff's Motion to Preclude Testimony of Mr. Philip Green (D.I. 292), Plaintiff's Motion for Summary Judgment of Invalidity and Non-Infringement of Claims 40 and 41 of the '188 Patent (D.I. 295), Plaintiff's Motion for Summary Judgment of Non-Infringement and No Willful Infringement (D.I. 299), and Defendant's Motion to Exclude the Opinions and Testimony of John C. Jarosz (D.I. 302) are dismissed as moot.